UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JODY ANN HADLEY,                       )
                                       )
                Plaintiff              )
                                       )
v.                                     )     No. 2:14-cv-77-JHR
                                       )
CAROLYN W. COLVIN,                     )
*Acting Commissioner of Social Security,* )
                                       )
                Defendant              )

### MEMORANDUM DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge erred in declining to credit her testimony fully and in making a residual functional capacity ("RFC") determination unsupported by substantial evidence. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 17) at 4-6. Because the administrative law judge's credibility and RFC determinations are supported by substantial evidence, I affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 12, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 20.

administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2011, Finding 1, Record at 18; that she had a severe impairment of bilateral shoulder dysfunction, Finding 3, *id.*; that she retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she should not lift and carry more than 10 pounds frequently, she could sit, stand, and walk for up to six hours each in an eight-hour workday, she could occasionally push and pull up to 10 pounds with her bilateral upper extremities, she should not climb ladders, ropes, or scaffolds, she should not crawl, she should avoid all overhead work but could occasionally reach forward and laterally for weights up to 10 pounds, she could frequently balance, stoop, kneel, and crouch, and she should avoid exposure to unprotected heights and vibrating tools, Finding 5, *id.* at 20; that, considering her age (51 years old, defined as an individual closely approaching advanced age, on her alleged disability onset date, October 6, 2009), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 23-24; and that she, therefore, had not been disabled from October 6, 2009, through the date of the decision, October 16, 2012, Finding 11, *id.* at 24. The Appeals Council declined to review the decision, *id.* at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

    The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

### I.  Discussion

### A.  Credibility Determination

The plaintiff testified before the administrative law judge that she suffered from severe shoulder pain, hand pain, and symptoms of anxiety and depression, which prevented her from working. *See* Record at 21. She stated that, following shoulder surgery, she had a hard time lifting anything heavier than a gallon of milk, she had trouble driving because her hands went numb, and a typical day consisted of waking up at 6:00 a.m., taking her pills, sitting on the porch and smoking a cigarette, making her bed, and going for short walks. *See id.* at 21-22. She alleged anxiety issues

3

and problems with alcohol, although she testified that she had been sober since Mother's Day 2012. *See id*. at 22.

The administrative law judge found the plaintiff's statements concerning her symptoms not credible to the extent that they were inconsistent with his RFC finding, explaining:

> The [plaintiff's] testimony is internally inconsistent and not supported by the evidence of record. The [plaintiff] admitted that she smokes cigarettes on a regular basis, even though she alleged some breathing problems. She noted in her Function Report[] that she is able to drive, shop, cook simple meals, go out alone, manage her finances, socialize with friends and family, maintain attention and concentration, follow instructions, and handle routine changes. All these activities show much higher functioning than alleged. Although the inconsistent information provided by the [plaintiff] may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the [plaintiff] generally may not be entirely reliable.

*Id*. (citation omitted).

The administrative law judge acknowledged that the plaintiff had been treated for shoulder pain over the prior three years but deemed her shoulder problems not as severe as alleged, noting that treating physician Albert Aniel, M.D., did not mention any problem with the plaintiff's shoulder in the most recent progress note of record, dated January 23, 2012, instead indicating that the plaintiff was smoking and drinking, even though she was advised to stop. *See id*. at 22, 430-32. He pointed out that, on that date, the plaintiff denied any pain, shortness of breath, or fatigue, and her examination was normal, despite obesity. *See id.*

He observed that James D. Kuhn, M.D., the plaintiff's orthopedic specialist, noted in October 2011 that she had good cervical range of motion and "intact motor and sensory function distally" but had issues lifting her arm, and that agency examining consultant Renato Medrano, M.D., performed an April 2011 examination during which he found normal motor strength and normal range of motion, although the plaintiff had some shoulder tenderness and restriction. *See id.* at 22, 424-25, 427. He pointed out that, nonetheless, Dr. Medrano found that the plaintiff had

4

normal grip strength in both hands and was able to pick up objects without difficulty. *See id.* at 22, 425.

The administrative law judge stated that, although the plaintiff had shoulder discomfort in August 2009, there was no evidence to suggest that her condition worsened after her alleged disability onset date, October 6, 2009. *See id*. at 22. He observed that, in December 2010, the plaintiff was found to have a good range of motion of her shoulder despite her discomfort, and her treatment record showed a stable mood and mostly normal physical examinations. *See id*.

He accorded evidentiary weight to the four opinions of record by agency nonexamining consultants: those of Brian Stahl, Ph.D., dated March 10, 2011, and David R. Houston, Ph.D., dated August 16, 2011, that the plaintiff's mental impairments were nonsevere, and those of Richard T. Chamberlin, M.D., dated April 21, 2011, and Lawrence P. Johnson, M.D., dated August 12, 2011, with respect to her physical RFC. *See id*. at 22-23, 95-99, 121-25. However, he declined to adopt pulmonary and handling restrictions assessed by Drs. Chamberlin and Johnson, explaining that the evidence of record did not suggest any severe pulmonary or handling issues. *See id*. at 23. He adopted Drs. Chamberlin and Johnson's limitations that the plaintiff should not lift/carry more than 10 pounds, could only occasionally push/pull or reach in front or laterally with her arms, and could never reach overhead, commenting that she had shoulder pain and had admitted that she could lift a gallon of milk, which weighs about 10 pounds. *See id.* He summarized:

> As can be seen, while the [plaintiff] suffers from the alleged impairments, they are not as severe or debilitating as alleged. The evidence shows that the [plaintiff] is exaggerating symptoms. The consultative examinations revealed that the [plaintiff] is able to lift up to 10 pounds frequently. Even though the [plaintiff] has bilateral shoulder pain, [she] is able to engage in a number of activities, including performing some chores, shopping, socializing, driving, that far exceed the allegations. [She] is capable of fine motor function and maintains enough attention to be able to follow a television show, or read. [She] may experience anxiety and depression; however, these symptoms are well controlled when [she] is adhering to

medical treatment. The record shows long periods when [her] mental condition is stable.

*Id.*[2]

The plaintiff first complains that the administrative law judge wrongly discredited her allegations in part on the basis of lack of objective medical evidence, citing *Ormon v. Astrue*, 497 Fed. Appx. 81, 86-87 (1st Cir. 2012), and her testimony at hearing that she had been without medical insurance coverage and largely unable to afford treatment for the one or two years prior to her hearing date. *See* Statement of Errors at 4; Record at 42-43.

As the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 19) at 6, the administrative law judge did not discredit the plaintiff's allegations solely on the basis of a lack of objective evidence. Rather, he provided a host of reasons for his finding. *See* Record at 21-23. By contrast, in *Ormon*, the administrative law judge discredited a claimant's allegations solely on the basis of a lack of objective medical evidence and his unsupported layperson's assessment that the claimant was malingering. *See Ormon*, 497 Fed. Appx. at 86-87.

As the commissioner also points out, *see* Opposition at 6-7, the administrative law judge did not discredit the plaintiff's claims on the basis of either her testimony regarding her inability to afford treatment or any failure to follow prescribed treatment, apart from her continued smoking of cigarettes against medical advice, *see* Record at 21-23. The commissioner persuasively argues that noncompliance with medical advice to cease smoking is a permissible basis on which to discount a claimant's credibility. *See* Opposition at 7-8; *see also, e.g., MacDonald v. Astrue*, Civil Action No. 10-11439-GAO, 2011 WL 4479774, at *9 (D. Mass. Sept. 27, 2011) (administrative

---

[2] The administrative law judge mistakenly stated that the consultative "examinations" revealed that the plaintiff could lift 10 pounds. The reports of the nonexamining consultants, Drs. Chamberlin and Johnson, support that proposition. *See* Record at 97, 123. Nothing turns on the error.

6

law judge permissibly drew a negative credibility inference based in part on claimant's continued heavy smoking despite doctors' repeated advice that ceasing smoking was imperative to his health); *Mooney v. Shalala*, 889 F. Supp. 27, 32 (D.N.H. 1994) (claimant's continued smoking, although it aggravated his asthma, was among contradictions in his testimony that "provided ample evidence for the ALJ to determine that [the claimant's] subjective complaints, including pain, were not entirely credible").

While, as the commissioner acknowledges, an administrative law judge may not draw a negative inference based on failure to follow prescribed treatment without considering any explanations that the claimant may provide, she persuasively argues that the plaintiff has not shown that any such inquiry would have made a difference. *See* Opposition at 8-9 n.2; Social Security Ruling 96–7p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2014) ("SSR 96–7p"), at 140 ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."). The plaintiff identifies no evidence that her lack of health insurance had any bearing on her ability to discontinue smoking.[3]

---

[3] The plaintiff additionally complains that the administrative law judge drew a negative inference in part on the basis of her continued consumption of alcohol and disregarded her testimony that she had discontinued use of alcohol several months prior to the hearing and had limited her cigarette smoking. *See* Statement of Errors at 5; Record at 39-40. As the commissioner replies, *see* Opposition at 8, the administrative law judge did not draw a negative credibility inference based on the plaintiff's alcohol use. He merely stated that Dr. Aniel did not make any mention of shoulder problems during the plaintiff's January 23, 2012, visit, instead focusing on other issues that included her continued smoking and drinking against medical advice. *See* Record at 22. In any event, even if he had drawn such a negative inference, it was permissible for the same reasons as was the drawing of a negative inference with respect to failure to cease smoking. The administrative law judge did acknowledge the plaintiff's testimony that she had ceased drinking prior to the hearing. *See id.* Similarly, despite her testimony that she had cut back as of the time of hearing to smoking eight cigarettes daily, *see id.* at 39, the administrative law judge permissibly took into account her noncompliance throughout the entire period at issue with the directive to cease smoking.

7

The plaintiff finally contends that the sporadic activities of daily living reflected in her function report did not provide an adequate basis for discrediting her allegations of disabling limitations, a proposition for which she also cites *Ormon*. See Statement of Errors at 4-5. In *Ormon*, the First Circuit rejected the commissioner's argument that, although the administrative law judge had not relied on the claimant's activities of daily living, they supported his discrediting of the claimant's complaints of disabling pain. *See Ormon*, 497 Fed. Appx. at 87. The First Circuit noted that the commissioner had overlooked the claimant's reported limitations in his ability to perform the activities at issue and that, in any event, there is a difference between being able to engage in sporadic physical activities and work eight hours a day, five days a week. *See id.*

*Ormon*, again, is distinguishable. In *Ormon*, the First Circuit found that the administrative law judge had improperly rejected a treating physician's RFC opinion and equally improperly relied upon that of an agency nonexamining consultant. *See Ormon*, 497 Fed. Appx. at 84. The RFC determination at issue in *Ormon*, hence, was unsupported by medical opinion evidence. Here, by contrast, there was no treating source RFC opinion, and I determine, for the reasons discussed below, that the administrative law judge properly relied on the only medical source opinions of record, those of the four agency nonexamining consultants. While a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, *see, e.g., Eaton v. Astrue,* Civil No. 07-188-B-W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008) (rec. dec., *aff'd* December 1, 2008), an administrative law judge properly may take such activities into consideration in assessing the credibility of a claimant's allegations, *see, e.g., Nolan v. Astrue,* Civil No. 09-323-P-H, 2010 WL 2605699, at *7 n. 4 (D. Me. June 24, 2010) (rec. dec., *aff'd* July 28, 2010).

8

The plaintiff does complain that, in at least one respect, the administrative law judge mischaracterized the evidence on which he relied – her testimony concerning her ability to lift a gallon of milk. *See* Statement of Errors at 3. Her point is well-taken. In response to the question whether she could lift and carry a gallon of milk, she stated, "Well, I can grab a hold of it but as far as putting it into a cart or – I can't lug it very – you know, I can't lug it." Record at 46. She added, "I usually have somebody with me pick the heavy stuff up for me . . . [b]ecause I just pay for it so much." *Id*. However, this error in itself does not warrant reversal and remand. The administrative law judge's credibility finding is otherwise supported by multiple observations that the plaintiff either does not challenge or that withstand her challenge. Accordingly, it is entitled to deference. *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."); *see also, e.g., Little v. Colvin*, No. 2:13-CV-365-GZS, 2014 WL 5782457, at *8 (D. Me. Nov. 6, 2014) ("As the commissioner contends, [the administrative law judge's] analysis easily survives the applicable, deferential standard of review, both because the plaintiff does not challenge all relevant credibility findings and because the ones that he does challenge, detailed below, withstand scrutiny.") (citation omitted). These include observations that bear on limitations flowing from the plaintiff's shoulder impairment, such as the lack of any notation by Dr. Aniel on January 23, 2012, of any issue with her shoulder.

### B. RFC Determination

The plaintiff next contends that the administrative law judge impermissibly adopted the opinions of Drs. Stahl, Houston, Chamberlin, and Johnson, which "do not provide any detailed

supporting rationales and instead merely summarize the available medical evidence and offer brief conclusory statements that constitute their RFC assessments." Statement of Errors at 5 (quoting *Berrios Lopez v. Secretary of Health & Human Servs*., 951 F.2d 427, 431 (1st Cir. 1991), for the proposition that reports from nonexamining sources that "contain little more than brief conclusory statements . . . are entitled to relatively little weight").

She complains, in particular, that the finding by Drs. Chamberlin and Johnson that she could lift and carry up to 10 pounds frequently is inadequately supported and explained, given that the agency examining consultant, Dr. Medrano, indicated that she had unspecified lifting/carrying restrictions. *See id*. at 3-4. She notes that Drs. Chamberlin and Johnson found Dr. Medrano's report "helpful" but observed that "the recommended limitations are stated in very general terms[,]" after which, she asserts, they proceeded to assess lifting/carrying limitations without any detailed supporting rationale. *Id*. at 3 (quoting Record at 97). She adds that a "large portion of the opinions provided by the non-examining consultants . . . describe her allegations as credible, rather than providing reasons for disregarding her allegations or finding that her work-related abilities are greater than she alleges." *Id*. at 5-6.

I find no error.

As the commissioner points out, *see* Opposition at 10-11, on initial consideration, Drs. Stahl and Chamberlin summarized the plaintiff's alleged impairments and the medical evidence of record and explained each salient conclusion, *see* Record at 94-99. For example, Dr. Chamberlin provided an explanation for each of four categories in which he noted limitations – exertional, postural, manipulative, and environmental. *See id*. at 97-99. On reconsideration, at which stage no new evidence apparently was submitted, Drs. Houston and Johnson either explained their determinations or adopted the explanation provided on initial consideration. *See id*. at 122-25.

The opinions are sufficiently detailed to constitute substantial evidence upon which the administrative law judge could rely. *See Berrios Lopez*, 951 F.2d at 431 (nonexamining consultant's report constituted substantial evidence in support of the administrative law judge's RFC finding when consultant "at least briefly mention[ed] all of claimant's alleged impairments and state[d] medical conclusions as to each[,]" suggesting that he "did review the medical file with some care[,]" had most, if not all, of the medical evidence available for review, and rendered an opinion consistent with that of second nonexamining consultant, reinforcing his conclusions).

While Dr. Medrano did not specify lifting/carrying restrictions, Drs. Chamberlin and Johnson did not indicate that they lacked sufficient evidence to draw a conclusion regarding those capacities. The court will not substitute its own judgment for that of medical experts as to whether, at the time they rendered their opinions, they had sufficient evidence to do so. The plaintiff identifies no later-submitted evidence, apart from her own testimony, that calls their conclusions into doubt. That is insufficient to warrant reversal and remand.[4]

Finally, as the commissioner observes, *see* Opposition at 4-5, the agency nonexamining consultants did not fully credit the plaintiff's allegations of disabling limitations. Dr. Stahl found that the medical evidence supported anxiety and depression but that associated limitations were nonsevere. *See* Record at 96. Dr. Chamberlin acknowledged that the plaintiff had some pain and discomfort in her shoulders and problems with anxiety but disagreed that these conditions were disabling, concluding that she remained capable of performing lighter types of work that did not

---

[4] At oral argument, the plaintiff's counsel contended that Drs. Chamberlin and Johnson disregarded Dr. Medrano's opinion regarding her lifting/carrying limitations. This is not a fair characterization. Both Drs. Chamberlin and Johnson found that the plaintiff could lift or carry only up to 10 pounds. This is below the level required for a full range of light work, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

require constant handling or overhead reaching. *See id*. at 101. Drs. Johnson and Houston deemed the plaintiff "partially credible[.]" Record at 122.

In sum, the plaintiff falls short of demonstrating that the medical opinions upon which the administrative law judge relied could not constitute substantial evidence of her RFC.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 28th day of December, 2014.

                                            /s/ John H. Rich III
                                            John H. Rich III
                                            United States Magistrate Judge